ESTATE OF GEORGE W. HALL, DECEASED, B. BROWER HALL, CHARLES F. GRIMES AND PAUL H. DAVIS, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3469. Promulgated April 30, 1946.

*J. Arthur Miller, Esq., Harry B. Sutter, Esq.,* and *Harry D. Orr, Jr., Esq.,* for the pettioners.

*Gerald W. Brooks, Esq.,* for the respondent.

OPINION.

BLACK, *Judge*: This proceeding involves the determination of a deficiency of $49,620.32 in estate tax. The deficiency is due to several adjustments made by the respondent to the net estate of the decedent as disclosed by the estate tax return. All of these adjustments are small except one. This latter one is the only one contested and represents an addition to the value of the gross estate of two "Transfers" in the total amount of $159,794.40. In a statement attached to the deficiency notice the respondent explained these transfers as follows:

*Transfers*

|  | Returned | Determined |
|---|---|---|
| The following assets of a Trust created on January 21, 1930, with the Continental Illinois Bank and Trust Company, Trustee: |  |  |
| [Here he lists 21 separate items of property which we summarize as follows] | $31, 617. 84 | $120, 828. 35 |
| The following assets of a Trust created on August 3, 1929, with Central Trust Company, as Trustee: |  |  |
| [Here he lists 18 separate items of property which we summarize as follows] | 18, 333. 67 | 88, 917. 56 |
| [Totals | 49, 951. 51 | 209, 745. 91] |
| [Less amount returned |  | 49, 951. 51] |
| [Amount added by respondent |  | 159, 794. 40] |

The value of the property transferred by decedent in trust, wherein he retained the income received from the principal of said trust during his lifetime, is included in the gross estate under Section 811 (c) of the Internal Revenue Code, as a transfer intended to take effect in possession or enjoyment at or after death. In this connection, attention is called to the case of *Helvering* vs. *Hallock*, 309 US 106, and *Estate of Mary H. Hughes*, 44 BTA 1196.

The above amount of $49,951.51 shown as returned by petitioners on the estate tax return represents those items of property which were transferred to the two respective trusts after the Joint Resolution of March 3, 1931. There is no issue as to these items.

The above amount of $159,794.40 shown as determined by the respondent represents those items of property which were transferred to the two respective trusts before the Joint Resolution of March 3, 1931. By appropriate assignments of error petitioners contest the addition to the value of the gross estate of the above amount of $159,-794.40, and also assign as error the following:

(d) Respondent erred in determining the amount of decedent's net estate subject to estate taxes in not allowing the deduction of additional expenses of administration paid and to be paid by petitioners subsequent to the filing of the Federal Estate Tax Return and not claimed as a deduction in said return, including attorneys' fees and other expenses of this proceeding.

Because of assignment of error (d), petitioners claim there will be an overpayment instead of a deficiency. In this connection the parties stipulated "that proof of such additional expenses may be submitted and a determination and allowance made of the proper deduction therefor upon the final settlement of this case under Rule 50 * * *."

The respondent in an amendment to his answer "avers that the Commissioner, in determining the deficiency set forth in the deficiency notice, properly included in the decedent's gross estate the assets of the trusts created on August 3, 1929 and January 21, 1930, with the Central Trust Company and the Continental Illinois Bank and Trust Company, respectively, as Trustees, as transfers intended to take effect in possession or enjoyment at or after his death (Sec. 811(c), Internal Revenue Code), and as transfers wherein the enjoyment thereof was subject at the date of his death to a change through the exercise of a power by him to alter, amend or revoke (Sec. 811(d), Internal Revenue Code)." The respondent makes no contention that any part of the corpora of the two trusts is includible in the gross estate under section 811(a) of the Internal Revenue Code.

The facts are found as stipulated, and are summarized below.

Petitioners B. Brower Hall, Charles F. Grimes, and Paul H. Davis, all residents of Chicago, Illinois, are the duly appointed, qualified, and acting executors of the will of George W. Hall, deceased, who died on October 25, 1941, at the age of 72, a resident of Chicago. The will was executed on December 22, 1939. The Federal estate tax return for the estate of the decedent was filed with the collector for the first district in Chicago on January 12, 1943, at which time the tax shown to be due thereon in the amount of $40,520.60 was paid. Pursuant to section 811(j) of the Internal Revenue Code, petitioners elected to value all the property included in decedent's gross estate as of a date one year after decedent's death and so indicated their election in the return. The decedent prior to his death had been a practicing physician.

Under date of August 3, 1929, the decedent's two children, B. Brower Hall and Martha Nadine Grimes, executed and delivered a certain trust agreement with the Central Trust Co. of Illinois (now City National Bank & Trust Co. of Chicago) as trustee. Under date of January 21, 1930, the same parties executed and delivered a trust agreement with Continental Illinois National Bank & Trust Co. (now Continental Illinois National Bank & Trust Co. of Chicago) as trustee. The securities which the decedent's two children conveyed to the respective trustees under said trust agreements had been received by them for that purpose from the decedent immediately prior to the creation of the respective trusts, and in the case of each trust the two transfers were simultaneous. The material provisions of the two trust agreements are identical and are as follows [excerpts herein are from the 1929 trust]:

THIS INDENTURE, made and entered into this 3rd day of August, 1929, by and between BERTRAM BROWER HALL and MARTHA NADINE GRIMES, both of the City of Chicago, Illinois, parties of the first part, and CENTRAL TRUST COMPANY OF ILLINOIS * * * party of the second part.

\* \* \* \* \* \* \*

## ARTICLE I.

\* \* \* \* \* \* \*

B During the lifetime of GEORGE W. HALL, the beneficiary hereinafter mentioned, the Trustee shall hold all or any part of the Trust Property in its original form, unless otherwise directed by said GEORGE W. HALL and make such sales or exchanges of all or any part of the Trust Property as may from time to time be directed in writing by said GEORGE W. HALL, and make any investment or investments or loans of the monies held as part of the Trust Property which the said GEORGE W. HALL may at any time in writing request or direct the Trustee to make, and the Trustee shall not be liable on account of any action taken by it pursuant to any written request or direction of said GEORGE W. HALL; provided, however, that if for any reason whatsoever it shall be impractical for the Trustee to secure the prior instructions or directions of the said GEORGE W. HALL with reference. to any sale, exchange or investment which in its discretion should be consummated then and in that event the Trustee may act under the power and discretion hereinbefore conferred upon it without obtaining the prior instructions or directions of said GEORGE W. HALL and without incurring any liability for failure to obtain such prior instructions and directions. After the death of the said GEORGE W. HALL the Trustee may retain the securities and properties then constituting the Trust property, or any part thereof, without liability for any decrease in the value of such securities or properties, or may convert the same or any part thereof into cash and invest and reinvest the proceeds thereof in accordance with the terms and provisions hereof.

\* \* \* \* \* \* \*

## ARTICLE II.

The Trustee may purchase securities or property from, and may also make loans or advances to the Executors or other representatives of the estate of the said BERTRAM BROWER HALL and MARTHA NADINE GRIMES and/or of the estate of the hereinafter mentioned GEORGE W. HALL in case any of such executors or other representatives are in need of cash to pay taxes, claims or other indebtedness; such loans or advancements may be secured or unsecured, but in no event shall the Trustee hereunder be responsible or liable in any way for any loss resulting by reason of any such loan or loans having been made.

\* \* \* \* \* \* \*

## ARTICLE IV.

A The Trustee shall pay the entire net income of the Trust Property at such convenient times (not less than once in every three months) as the Trustee shall from time to time determine
1. To GEORGE W. HALL during his lifetime,
2. After the death of the said GEORGE W. HALL, to NELL N. HALL during her lifetime.

B Immediately upon the death of the survivor of GEORGE W. HALL and NELL N. HALL, the Trust Property and all of the undistributed income thereof (after deducting therefrom the amount of all accrued costs and expenses) shall be divided into as many equal portions (one or more) as there are children (one

or more) of the said GEORGE W. HALL and NELL N. HALL who are living, and/or who are dead, leaving lawful descendants (one or more) who are living at the time of the death of such survivor, which said equal portions shall be distributed and/or held by the Trustee as follows:

C One of said portions shall be paid and delivered to each of the children of the said GEORGE W. HALL and NELL N. HALL who shall be living at the time of the death of the survivor of GEORGE W. HALL and NELL N. HALL, subject however, to the limitations hereinafter contained.

D In the event that upon the death of the survivor of GEORGE W. HALL and NELL N. HALL, any child of the said GEORGE W. HALL and NELL N. HALL shall be dead, leaving a single (not more than one) lawful descendant who shall be living at the time of the death of such survivor, one of such equal portions shall immediately be transferred, conveyed, and/or delivered to such living lawful descendant of each such deceased child, and

E In the event that upon the death of the survivor of GEORGE W. HALL and NELL N. HALL, any child of said GEORGE W. HALL and NELL N. HALL shall be dead leaving children (more than one) who shall be living at the time of the death of such survivor, one of such equal portions shall immediately be divided and distributed per stirpes among such living lawful descendants of each such deceased child.

F In the event that upon the death of the survivor of GEORGE W. HALL and NELL N. HALL, no child of the said GEORGE W. HALL and NELL N. HALL, or lawful descendants (one or more) of a deceased child or children shall be living, then the Trust Property and the undistributed income thereof (after deducting therefrom the amount of all accrued costs and expenses) shall be distributed among the heirs at law of the said GEORGE W. HALL in accordance with the statutes of descent of the State of Illinois then in force and effect.

\* \* \* \* \* \* \*

### ARTICLE VII.

No title to any part of the Trust Property (or of any Trust Estate) or to the income accruing therefrom, shall vest in any beneficiary hereunder during the continuance of the trust as to such beneficiary, and no beneficiary shall have the right or power to transfer, assign, or anticipate his or her interest in the Trust Property (or in such Trust Estate), or in the income therefrom, prior to the actual distribution thereof by the Trustee to such beneficiary, and no part of the Trust Property, or of the Trust Estate, or of the income therefrom, shall in any wise be liable or subject to any claim of any creditor of any such beneficiary. \* \* \*

\* \* \* \* \* \* \*

### ARTICLE IX.

\* \* \* \* \* \* \*

E The Trust hereby created may be revoked at any time within six (6) months from the date hereof, upon the delivery to the Trustee of a written instrument of revocation, signed by BERTRAM BROWER HALL and MARTHA NADINE GRIMES, or the survivor of them, and GEORGE W. HALL, and if no such instrument of revocation shall be delivered to the Trustee within said period the Trust hereby created shall be and become irrevocable.

At the date of the death of decedent he was survived by the following persons, whose birth dates and relationship to the decedent were as follows:

| Name | Relationship | Birth date |
|------|-------------|-----------|
| Nell N. Hall | Widow | Nov. 22, 1870. |
| B. Brower Hall | Son | Mar. 4, 1901. |
| Martha Nadine Grimes | Daughter | Dec. 10, 1895. |
| Frances Nadine Grimes | Granddaughter | Mar. 7, 1926. |
| George Hall Grimes | Grandson | May 28, 1928. |
| Martha Carol Grimes | Granddaughter | June 21, 1929. |

The decedent was also survived by two sisters and a brother and eight nephews and nieces.

We are here concerned only with that part of the corpora of the two trusts that was transferred to the trusts prior to the Joint Resolution of March 3, 1931.[1] The parties agree that the value of this part of the corpora of the two trusts on the optional valuation date is $159,794.40, as determined by the respondent. All of the property in question was personal.

We shall consider first whether any part of the above mentioned disputed portion of the corpora of the two trusts is includible in the decedent's gross estate under section 811 (c) of the Internal Revenue Code, the material provisions of which are in the margin.[2] In his deficiency notice, as indicated by the above mentioned statement, this was the only subsection of section 811 originally relied upon by the respondent. The case of *Estate of Mary H. Hughes*, 44 B. T. A. 1196, cited in the statement, was overruled in *Estate of Edward E. Bradley*, 1 T. C. 518; affirmed *sub nom. Helvering* v. *Washington Trust Co.* and reported under the name of *Helvering* v. *Proctor*, 140 Fed. (2d) 87. The Government did not seek certiorari. In the instant case, as stated in his brief:

> * * * the Commissioner does not here attempt to apply retroactively the provisions of section 302 (c) of the Revenue Act of 1926 as amended by the Joint Resolution of March 3, 1931, and he is not contending that the Commissioner's adjustment here must be approved merely because the decedent retained the income for his life under the theory of the *Hughes* case.

In this connection see also *Commissioner* v. *Hall Estate*, 153 Fed. (2d) 172, wherein the Second Circuit, among other things, said:

> The commissioner's argument that because the grantor reserved the net income for life, the corpus is taxable under § 302(c) cannot prevail in this court. The Joint Resolution of March 3, 1931 46 Stat. 1516, has no retroactive application. *Hassett* v. *Welch*, 303 U. S. 303. Until otherwise instructed we shall continue to

---

[1] Ch. 454; 46 Stat. 1516–1517.

[2] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

* * * * * * *

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT DEATH.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death * * *. [The remainder of this subsection is not material in view of *Hassett* v. *Welch*, 303 U. S. 303, and the absence of any contention on the part of the respondent that any of the transfers in question were made in contemplation of death.]

follow *May* v. *Heiner*, 281 U. S. 238, as we have recently done in *Helvering* v. *Proctor*, 140 F. 2d 87; and *Commissioner* v. *Irving Trust Co.*, 147 F. 2d 946.

In support of his contention that the disputed portion of the corpora of the two trusts is includible in the decedent's gross estate under subsection (c), the respondent relies upon the following points: (1) That the decedent was the real grantor of the trusts for the purposes of this controversy; (2) that, although the respondent is no longer contending that his adjustment here must be approved merely because the decedent retained the income of the trusts for his life, nevertheless, such retention may properly be considered as a factor in resolving this issue in respondent's favor; (3) that the death of the decedent was the indispensible and intended event which passed the corpora from the dead to the living; and (4) that the decedent retained valuable rights in himself which would not terminate prior to his death.

Petitioners contend that the decedent was not the grantor of the trusts, but that, even if he be so considered, there was no reversion in him or his estate or any possibility of reverter; that the only interest the decedent ever had in the trust estate here in question was a right to receive the income during his lifetime, which right by itself alone the respondent now concedes does not make the corpora a part of the gross estate under subsection (c), where the transfers were made prior to March 3, 1931.

The parties have stipulated that the securities which the decedent's two children conveyed to the respective trustees "had been received by them for that purpose from the decedent immediately prior to the creation of the respective trusts and in the case of each trust, the two transfers were simultaneous." In view of this stipulation we hold that for the purposes of this proceeding the decedent must be regarded as the grantor of the two trusts here in question. *Lehman* v. *Commissioner*, 109 Fed. (2d) 99. In that case the Second Circuit quoted with approval from Scott on Trusts, sec. 156.3, as follows: "A person who furnishes the consideration for the creation of a trust is the settlor, even though in form the trust is created by another." We, therefore, agree with the respondent on the first point relied upon by him.

As to the second point, the respondent argues that it must be emphasized that the retention of the income for life is an important factor to be considered in determining whether the shifting of the interest was complete as soon as the trust was created, citing *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, and that until the decedent died, and thereafter, the ultimate possession or enjoyment of the property was held in suspense to await the outcome of future contingencies, including the contingency that the corpus might be returned to the decedent or to his estate, citing *Fidelity-Philadelphia Trust Co.* (*Stinson Estate*) v. *Rothensies*, 324 U. S. 108. This we consider is no more than an indirect attack upon *May* v. *Heiner*, 281 U. S. 238. We disagree with the

respondent upon this point. *Estate of Edward E. Bradley, supra; Helvering* v. *Proctor, supra; Commissioner* v. *Hall Estate, supra.*

As to the third point, the respondent argues that the transfers in question were testamentary in character and are swept into the gross estate by section 302 (c) of the Revenue Act of 1926 as it stood prior to amendment by the Joint Resolution of March 3, 1931, citing as "directly in point" *Estate of Bertha Low*, 2 T. C. 1114; affirmed *sub nom. Orne* v. *Commissioner*, 145 Fed. (2d) 832, in a *per curiam* opinion, on authority of *Helvering* v. *Hallock*, 309 U. S. 106. Respondent in his brief strongly stresses the *Low* case as one of the principal authorities upon which he relies. In the *Low* case the decedent, Bertha Low, died July 13, 1940, a resident of New York. In 1923 she had transferred in trust considerable property and directed the trustee to pay the income therefrom to herself for life and upon her death to pay the principal to such of her "heirs at law and next of kin as may be living at the time of her death to be divided among them in the same manner as though she had died intestate, a citizen of the United States and a resident of the State of New York, and thereby terminate said trust." She reserved no power to revoke or modify; but neither was there a specific provision that the trust was irrevocable. In 1927 she attempted to amend the 1923 trust so as to exclude an aunt who would be her sole heir at law and next of kin. The legal effect of the purported amendment was never ruled upon by the New York courts. The question before us was whether under the trust instrument the decedent had created remainders in those who would be her distributees or whether she had merely retained a reversion. We held that under the New York law the question must be decided by ascertaining the "intent" of the grantor. From all the evidence we found that the decedent merely intended to effect a reversion in herself and had not disposed of the remainder. From such a finding, it followed as a matter of course that the trust corpus was includible in her gross estate under *Helvering* v. *Hallock, supra.*

The *Low* case is clearly distinguishable. The trusts in the instant case were specifically made irrevocable after a six-month period which had expired long before decedent's death. There was involved in the *Low* case no intermediate beneficiaries such as are involved in the instant case, who were clearly intended to be the remaindermen of the trusts. The decedent here was survived by all of the intermediate beneficiaries, consisting of his wife, his son, his daughter, and three grandchildren. The respondent submits that the laws of Illinois do not differ materially from those of New York upon the point mentioned in the *Low* case. Assuming that to be true, we think it was clearly the intention of the grantor under article IV–F of the trust instruments to create contingent remainder interests in the trust assets rather than to retain a reversion after the disappearance

of all the intermediate beneficiaries. Although we held above that the decedent must be regarded as the grantor, he was not in form the grantor. His two children were in form the grantors. The properties which the two children conveyed to the trusts "had been received by them for that purpose from the decedent immediately prior to the creation of the respective trusts" (stipulation). By adopting this form of creating the trusts it would seem to be a fair inference that all the decedent wanted to reserve in the property he was turning over to his children was the income therefrom for life. We do not think he intended to reserve any more than that. After a period of six months the trusts were irrevocable. We hold that the decedent retained no reversion or a possibility of reverter, or any power of appointment, and that, therefore, nothing is includible in the decedent's gross estate under subsection (c) as far as the respondent's third point is concerned. Cf. *Estate of Mabel H. Houghton*, 2 T. C. 871; [3] *Sutliff* v. *Aydelott*, 373 Ill. 633; 27 N. E. (2d) 529; and *Commissioner* v. *Irving Trust Co.*, 147 Fed. (2d) 946. *Commissioner* v. *Hall, supra.*

If, however, we are wrong as to the effect of article IV–F, and it be held that under that article the decedent did have a possibility of reverter, it is clear nothing passed at his death except the ending of that remote possibility of reverter, and it is our opinion that our holding must likewise be for the petitioners upon the authority of such cases as *Commissioner* v. *Kellogg*, 119 Fed. (2d) 54; [4] *Lloyd's Estate* v. *Commissioner*, 141 Fed. (2d) 758; *Commissioner* v. *Lasker's Estate*, 141 Fed. (2d) 889; *Frances Biddle Trust*, 3 T. C. 832; [4] *Estate of Benjamin L. Allen*, 3 T. C. 844; [4] *Estate of Harris Fahnestock*, 4 T. C. 1096; [4] *Estate of Mary B. Hunnewell*, 4 T. C. 1128; [4] *Estate of Nina M. Campanari*, 5 T. C. 488; [4] and *Estate of John Eckhardt*, 5 T. C. 673. [4]

The Government had filed petitions for review in the cases of *Biddle, Allen, Fahnestock,* and *Hunnewell,* and in each case it has moved that the petition for review be dismissed, *nolle pros.* In *Commissioner* v. *Hall, supra,* the court closed its opinion with this sentence: "And the recent Supreme Court decisions upon which the commissioner relies—*Fidelity Co.* v. *Rothensies*, 324 U. S. 108; *Commissioner* v. *Estate of Field*, 324 U. S. 113; *Goldstone* v. *United States*, 325 U. S. 687—do not require a contrary holding." We think *Commissioner* v. *Hall, supra,* is a case particularly applicable to the facts of the instant

---

[3] Acquiesced in by Commissioner, Cumulative Bulletin 1944, p. 14 (withdrawing previous nonacquiescence) and petition for review to C. C. A., 2d Cir., dismissed, *nolle pros.*, May 8, 1944.

[4] See Internal Revenue Bulletin No. 21, 1945, pp. 1 and 2, wherein the Commissioner published his acquiescence and withdrew his previous nonacquiescence, except in the *Campanari* and *Eckhardt* cases, wherein the Commissioner had not previously published a nonacquiescence.

case. We, therefore, hold against the respondent on his third point relative to inclusion under subsection (c).

The respondent's fourth point as to why the above mentioned disputed portion of the corpora of the two trusts is includible in the decedent's gross estate under subsection (c) is merely a continuation of his arguments under points two and three, except that under point four the respondent emphasizes in addition the provisions of article I–B and article II of the trust instruments. In this connection he argues that the "decedent's retention of the income for his life, the possibility of reversion in him, and these retained powers and rights over the trust corpora [having reference to articles I–B and II] taken together require the inclusion of these transfers in the gross estate as dispositions testamentary in nature and intent within the authority of" *Fidelity-Philadelphia Trust Co. (Stinson Estate)* v. *Rothensies, supra; Commissioner* v. *Estate of Field*, 324 U. S. 113; and *Goldstone* v. *United States*, 325 U. S. 687. Again we do not agree. We see nothing in articles I–B and II which would warrant our holding for the respondent on this point. The decedent reserved no power of appointment, contingent or otherwise, as in the *Stinson* case, nor did he reserve any strings by which the corpora in question could be drawn back to him or his estate. As we said in *Estate of Nina M. Campanari, supra,* "At all times during the existence of the trust remaindermen were in being, were known, and were able to take should the trust terminate." We think our holding on this point must be against the respondent upon the same authorities cited under points two and three above. We, therefore, hold that no part of the corpora of these trusts is includible in the decedent's gross estate under subsection (c).

Is any part includible under subsection (d)? That part of subsection (d) relied upon by the respondent is set forth in the margin.[5] As previously stated, this issue was affirmatively raised by the respondent in an amendment to his answer. Under this issue the respondent contends that the powers and rights referred to in articles I–B and II of the trust instruments make the enjoyment of the transfers subject at the date of decedent's death to a power reserved in the decedent to either "alter, amend, or revoke" the trusts. In support of this contention the respondent cites and relies upon *Commonwealth Trust Co. of*

---

[5] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States.—

\* \* \* \* \* \* \*

(d) REVOCABLE TRANSFERS—

\* \* \* \* \* \* \*

(2) TRANSFERS ON OR PRIOR TO JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke \* \* \*.

*Pittsburgh* v. *Driscoll*, 50 Fed. Supp. 949, affirmed *per curiam*, 137 Fed. (2d) 653; certiorari denied, 321 U. S. 764. Petitioners contend for the opposite and cite in support of their contention *Estate of Henry S. Downe*, 2 T. C. 967, petition for review to C. C. A., 2d Cir. dismissed June 1, 1944, upon Commissioner's motion to docket and dismiss, which case distinguished the *Driscoll* case.

In the *Driscoll* case John W. Herron, a resident of Pittsburgh, Pennsylvania, died on February 13, 1937. In 1922 he transferred certain securities to a trustee to collect the income therefrom and distribute it to his two daughters during their natural lives. The District Court found as a fact that: "The settlor retained the right to make any substitutions for the securities transferred as he deemed advisable, without restriction as to the kind or value of the securities substituted." In holding that the value of the corpus of the trust was includible in the decedent's gross estate under section 302 (d) of the Revenue Act of 1926, as amended, the District Court said:

Our view is that the retention by the settlor of this estate of the right to substitute other securities in place of those mentioned in the original trust instrument, is such a reservation that made the corpus of this trust taxable under Section 302 (d) of this Revenue Act. The plaintiff urges that the provision contemplates a substitution of securities having equal or equivalent values of those withdrawn from the trust fund. But we find no words in the trust instrument which would justify such a contention, because the instrument itself states that the settlor reserved the right to make any substitution.

In the *Downe* case Henry S. Downe, a resident of Syracuse, New York, died on December 8, 1938. On January 14, 1930, he transferred certain shares of stock in certain corporations to a trustee to collect the income therefrom and to distribute it to his wife for life, then to himself for life, if then living, with remainders over. Among other things the deed of trust provided:

The Grantor reserves the option to direct in writing the Trustee to issue voting proxies on and to retain, sell, exchange, invest and reinvest any of the trust property held hereunder in such manner as he may direct and without liability to the Trustee for resulting loss; and after the death of the Grantor such option shall be reserved to Ethel Lestrade Downe, wife of the Grantor, during her life.  *  *  *

Subject to this option, the trustee had the right to make investments in its own discretion. On the same day, Downe's wife executed a trust identical in all respects with his trust, except that the life beneficiaries were in the inverse order. The Commissioner contended that the corpora of both trusts were includible in the decedent's gross estate under section 302 (d) of the Revenue Act of 1926, as amended, upon the sole authority of the *Driscoll* case. We held on the authority of *Christopher L. Ward*, 40 B. T. A. 225, and *Emma B. Maloy*, 45 B. T. A. 1104, that the powers reserved by the grantor were not sufficient to enable him to amend, alter, or revoke the trust and that therefore no

part of the corpus was includible in his gross estate under section 302 (d) of the Revenue Act of 1926, as amended. In distinguishing the *Driscoll* case we said:

Apparently the court concluded that the power of substitution was equivalent to a power of withdrawal of the trust property with the revocation of the trust as a necessary consequence. The decedent here retained no such power. He merely retained the power to direct the investment policy of the trustee and not the right, as in the *Driscoll* case, "to make any substitutions of securities from time to time as he deems advisable."

We are of the opinion that the instant case is controlled by the *Downe* case and that the *Driscoll* case is distinguishable for the same reasons as stated by us in the *Downe* case. In the instant case there was no power reserved by the grantor to substitute securities. The trusts, as we have already pointed out, were specifically made irrevocable after a period of six months. The powers and rights referred to in articles I–B and II of the trust instruments amounted to no more, in our opinion, than the reservation by the grantor of the right to direct the investment policy of the trustee. We do not think the enjoyment of the beneficial interests of the trusts was at the date of decedent's death subject to any change through the exercise of any power by the decedent alone or in conjunction with any person to alter, amend, or revoke. We hold that no part of the corpora of the trusts is includible in the decedent's gross estate under section 811 (d) (2) of the Internal Revenue Code. Cf. *Helvering* v. *Stuart*, 317 U. S. 154; *Fifth Ave. Bank of N. Y. (Hill Estate)* v. *Nunan*, 59 Fed. Supp. 753.

In view of paragraph 8 of the stipulation of facts, our decision must be entered under Rule 50 to permit petitioners to offer proof of additional administration expenses, attorney fees, and expenses of litigation which have not heretofore been allowed.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

ARNOLD, DISNEY, and OPPER, *JJ.*, dissent.